JOSEPH H. ALLEN

*v.*

THE DISTILLING COMPANY OF AMERICA et al.

UNITED STATES INDUSTRIAL ALCOHOL COMPANY

*v.*

THE DISTILLING COMPANY OF AMERICA et al.

SAMUEL M. RICE et al.

*v.*

THE DISTILLING COMPANY OF AMERICA et al.

[Decided March 22d, 1917.]

1. Where a corporation has entered into a legal contract of guaranty to pay dividends on the stock of another corporation, it cannot dissolve, or its stockholders be permitted to vote their stock in favor of such dissolution without making adequate provision for the contingent liability on its contract of guaranty.

2. In such case a court of equity will enjoin dissolution proceedings, the corporation being solvent.

3. Stockholders may estop, and in this case, it is *held*, they have estopped themselves from exercising their right under the statute to vote to dissolve a corporation without making adequate provision to take care of contingent obligations.

4. The jurisdiction of equity considered and defined.

On bill, &c.

*Messrs. Pitney, Hardin & Skinner* (*Mr. Hardin* and *Mr. Adrian II. Larkin,* of the New York bar), for the complainants Joseph H. Allen and the United States Industrial Alcohol Company.

*Messrs. Vredenburgh, Wall & Carey* (*Mr. Wall* and *Mr. Charles H. Stoll*, of the New York bar), for the complainants Samuel M. Rice and others.

*Messrs. Lindabury, Depue & Faulks* (*Mr. Lindabury, Mr. Faulks* and *Mr. Levy Mayer*, of the Illinois bar), for the defendants.

LANE, V. C.

The three suits involve the same facts. The difference is as to the nature of the relief prayed. The point at issue is whether the Distilling Company of America (hereafter called "Distilling Company") may be dissolved by its stockholders without providing for the contingent liability of the corporation upon its guaranties of the payment of dividends upon the preferred stocks of the United States Industrial Alcohol Company (hereafter called the "Industrial Company") and the Cuba Distilling Company (hereafter called the "Cuba Company"). Complainant Allen is a preferred stockholder of the Industrial Company. Complainant Industrial Company is a preferred stockholder of the Cuba Company. Complainants Rice and others are preferred stockholders of both the Industrial and Cuba Companies.

The Allen and Industrial bills seek to enjoin the dissolution of the Distilling Company. The Rice bill seeks to impress upon the assets, after dissolution, a lien or trust for the benefit of the preferred stockholders of the Industrial and Cuba Companies, and to have this court take over the proceedings in dissolution by the appointment of a receiver.

Upon the filing of the bills, orders to show cause were allowed with *ad interim* restraint. Motions have been made in the Allen and Industrial suits to strike out the bills upon the ground that they fail to set up facts sufficient to constitute any cause of action in equity or to entitle the complainants to the relief therein prayed for, or to any other relief in the premises. The hearing has been had upon the orders to show cause and the motions to strike out.

The facts are as follows: On October 17th, 1906, the Distilling Company entered into a contract with the Industrial Company and each and all of the then present and future holders of record of all or any part of the preferred stock of the Industrial Company, the pertinent portions of which read:

"Now, therefore, for good, valuable and adequate consideration to each of the first and second parties in hand paid, the receipt of which by them respectively is hereby acknowledged, it is hereby agreed as follows:

"1. The first party hereto guarantees to said George and to each and all of the present and future holders of record of all or any part of said preferred stock severally, so long as the same shall be outstanding, during said fifty (50) years, that said Industrial Co. shall and will always during said fifty (50) years have and possess adequate, sufficient and available surplus or net profits out of which to pay, and that said Industrial Co. shall and will promptly pay during said fifty (50) years out of said surplus or net profits said quarterly dividend of one and three-fourths per cent. (1¾%), on the said fifteenth days of January, April, July and October in each year during said fifty (50) years, beginning with the year 1907, on all of said preferred stock, so long as the same shall be outstanding during said fifty (50) years, and in case of any default by said Industrial Co. in making any such payment or payments, on any of said respective dates, the first party hereby guarantees that it shall and will immediately upon such default, pay to the then holder or holders of record of all or any part of said preferred stock, so long as the same shall be outstanding during said fifty (50) years, the amount of such defaulted payment or payments. It being understood and agreed, however, that to the extent of any and all payments which the first party may make by reason of this guaranty it shall and will be subrogated to all of the rights of said holders of record of said preferred stock to whom the first party has made or may make payment or payments hereunder, and the amount of such payments or payments, together with interest thereon at the rate of five per cent. (5%) per annum shall, and said Industrial Co. hereby agrees will be promptly repaid to the first party by said Industrial Co. from time to time as soon as said Industrial Co. has surplus or net profits sufficient to make such repayment in whole or in part.

"2. This guaranty shall be irrevocable. No voluntary or involuntary dissolution or merger or consolidation of said Industrial Co. or of the first party shall, except by and with the written consent of the holders of record of all of said preferred stock outstanding at the time, release, discharge, modify or affect said guaranty in any way."

On March 25th, 1907, the Distilling Company entered into a similar contract with the Cuba Company and all of the then present and future holders of its preferred stock.

The Distilling Company under its charter had full authority
to enter into these contracts. They were for valuable consid-
erations, were authorized by the board of directors and ratified
and approved by the stockholders of the Distilling Company.
The Industrial Company has outstanding $6,000,000 of pre-
ferred stock, and the Cuba Company $2,500,000, upon each and
every certificate of which the guaranty is printed. The Dis-
tilling Company has outstanding, common and preferred stock,
to the extent of seven hundred and seventy-three thousand six
hundred and ninety-eight shares of the par value of $100 each,
of which the Distillers Securities Corporation (hereafter called
the "Securities Company") owns seven hundred and seventy
thousand and twenty-six shares, or more than ninety-nine and
one-half per cent. It is conceded that the only shares not held
by the Securities Company are such as cannot be located. At
the time the guaranties were entered into the stock ownership
of the Distilling Company was the same as now. Prior to No-
vember 27th, 1916, the directors and stockholders (i. e., the
Securities Company) of the Distilling Company took proceed-
ings to dissolve it, and on that date there was filed with the sec-
retary of state the record of the proceedings under the terms of
the statute. The consent to the dissolution was executed by the
Securities Company as a holder of more than two-thirds of the
stock of the Distilling Company. Thereupon the secretary of
state issued his certificate. Publication was begun and would
have been completed about December 20th, 1916, if ad interim
restraint had not intervened.

It will be at once perceived that the same stock ownership as
approved the contracts of guaranty now assert the power to dis-
solve this guarantor company without regard to any supposed
rights of the guaranteed preferred stockholders. The stock of
the Securities Company is widely distributed. It is dealt in on
the New York stock exchange. The Industrial and Cuba Com-
panies are prosperous operating concerns. The Distilling Com-
pany has never yet been called upon to respond to the guaran-
tees. It is a holding corporation having assets of a par, and,
concededly, real, value of approximately $66,000,000.

The effect of the dissolution will be substantially a turning over of the assets of the Distilling Company to the Securities Company. There is then nothing to prevent the Securities Company from dissolving and the distribution of its assets, including those now of the Distilling Company, or their value, to its stockholders, who are, as before stated, very numerous and who reside in many parts of the United States, and probably in foreign countries. The guaranties have about forty years yet to run. The Industrial and Cuba Companies now have assets which, if reduced to cash, would be sufficient to retire the preferred stock at par and above.

The preferred stockholders of the Industrial and Cuba Companies cannot be put in *status quo.* The consideration is executed.

The issue is: If A corporation authorized by a provision in its charter to guarantee payment of dividends on stock of B corporation, does so guarantee such payment for a period of forty years yet to run, for a valuable consideration, executed, so that the parties cannot be placed in *status quo,* such contract of guaranty being approved by the stockholders of A corporation, can it be permitted to dissolve and may the holders of the stock of A corporation who have approved the contract of guaranty be permitted to vote such stock in favor of such dissolution, without making some adequate provision for the contingent liability of A corporation to the stockholders of B corporation?

Defendants insist that under sections 1, 31, 53, 54 and 58 of the act concerning corporations (Revision of 1896), the Distilling Company may be dissolved by its stockholders and its assets distributed among them after payment of its debts (section 54), and that such contingent liabilities as are sought to be asserted by the complainants are not debts within the meaning of the statute, and that complainants are not creditors within the meaning of section 58, which provides that the trustees or receivers on dissolution shall pay, ratably, so far as the money and property of the corporation shall enable them, all of the creditors who prove their debts in the manner directed by the court, and that the balance, after the payment of such debts, be distributed among stockholders.

The cases relied upon are those which hold that upon insolvency or bankruptcy obligations of this character cannot be enforced against assets on a par with creditors holding certain claims. *Riggin* v. *Magwire, 15 Wall. 549; Dunbar* v. *Dunbar, 190 U. S. 340; Conklin* v. *United States Shipbuilding Co., 136 Fed. Rep. 1006; 143 Fed. Rep. 631; In re Pettingill, 137 Fed. Rep. 143; People* v. *Metropolitan Surety Co., 205 N. Y. 135.* Those which hold that upon the administration of the estate of a deceased such obligations cannot be enforced. *Field* v. *Thistle, 58 N. J. Eq. 339; affirmed, 60 N. J. Eq. 444; Terhune* v. *White, 34 N. J. Eq. 98.* Those which hold that the court will not prevent the distribution of an estate in order to permit such claims to ripen into certain obligations. *Jervis* v. *Wolferstan, 18 L. R. Eq. Cas. 18; In re Nixon (1904), 1 Ch. Div. 638.* Those which hold that the existence of such a contingent liability does not bring a voluntary conveyance within the rule that the contemporaneousness of a gift and the existence of a debt is conclusive of fraud in proceedings to set aside an alleged fraudulent conveyance. *Severs* v. *Dodson, 53 N. J. Eq. 633; Mason* v. *Somers, 59 N. J. Eq. 451.* These latter cases must be confined to the very point decided. *Dodson* v. *Taylor, 53 N. J. Law 200; New Jersey Ins. Co.* v. *Meeker, 37 N. J. Law 282.* They also rely upon the opinion of Vice-Chancellor Stevenson in *Hoopes* v. *Basic Co., 69 N. J. Eq. 679.*

Complainants insist that the assets of a corporation are a trust fund to secure the payment of its debts or obligations, certain or contingent, and that it is unjust and inequitable to permit the distribution of this trust fund to stockholders unless adequate provision is first made to take care of the contingent liability to the preferred stockholders of the Cuba and Industrial Companies; that their rights are superior to any rights of stockholders; that the stockholders of the Distilling Company have by the terms of the contracts of guaranty estopped themselves from taking any action to dissolve the Distilling Company without making adequate provision for these contingent obligations; that to permit dissolution in the manner contemplated would be to deprive complainants of any remedy upon the contracts of guaranty.

To this the defendants reply that complainants accepted such contracts of guaranty with full knowledge of the law, and that the dissolution of the Distilling Company does not in fact deprive complainants of a remedy because by virtue of the statute, sections 53, 87 and 90 of the Corporation act, corporate existence is continued for certain purposes, among which is that of being sued upon this class of liabilities; that if, in the future, there should be a default in the payment of dividends by the Cuba and Industrial Companies which would convert the contingent into a certain liability, the preferred stockholders might sue the corporation, make service upon it, obtain judgment against it, and then enforce the judgment against its assets in the hands of its stockholders, or against its stockholders for the value of the assets that they have received.

The mere statement of the remedy reserved to the preferred stockholders of the Cuba and Industrial Companies proves its total inadequacy. If the assets of the Distilling Company are turned over to the Securities Company, the Securities Company in turn may be dissolved and its assets distributed among its stockholders, residing in all parts of the United States and foreign countries. I cannot believe a remedy which would oblige these preferred stockholders, upon a breach of the contracts of guaranty thirty or forty years hence, to follow the assets of the Distilling Company or the stockholders of the Securities Company, wherever they might then be, is in reality any remedy.

It was apparently seriously contended upon the oral argument that because, upon the dissolution of this corporation, its assets will go to the Securities Company, substantially the single stockholder, it was a mere conversion, and the preferred stockholders, in case of default, might sue the Securities Company and that the relative rights are not altered. This is not true. The liabilities of the Securities Company are substantially different from those of the Distilling Company. There are no liabilities of the Distilling Company, save those under the contracts of guaranty. The case must be treated precisely as if the corporation, instead of having one stockholder, had twenty thousand. Unless relief can be granted in these cases in some form, a guaranty of a corporation solemnly entered into by its directors and

approved by its stockholders, may be, by action of the corporation and its stockholders, rendered of no force or effect. One party to a contract would be given the absolute privilege of avoiding it without liability. Guaranties of corporations would be of substantially the value of the paper upon which they were written.

For the purposes of this opinion it may be conceded that it is settled law that in cases of bankruptcy or insolvency or the estates of deceased, claims of this nature may not be asserted, but the underlying reason for the rule is convenience. Natural justice requires that contingent obligations should be protected as well as certain. It is only because there is no method by which their money worth can be presently ascertained, and because to withhold distribution of assets of insolvents and estates of deceased until such worth could be ascertained would be impracticable that the courts have been forced to adopt the prevailing rule.

Judge Noyes, in *Pennsylvania Steel Co.* v. *New York City Railway Co. (Circuit Court of Appeals, Second Circuit), 198 Fed. Rep. 721,* clearly points this out as does the court in *Gay Manufacturing Co.* v. *Gittings (Circuit Court of Appeals, Fourth Circuit), 53 Fed. Rep. 45;* in the latter case the court says:

"This case has been decided as between creditors and persons claiming to be creditors. It was stated at the bar that the property of the Gay Manufacturing Company may realize more than enough to pay the liens and the proved past-due debts. Should this be the result of the sale, there may arise a very different question with regard to this surplus as between the petitioners and the stockholders. No opinion is expressed on this point."

The case in its facts was very similar to those presented by the bills in the cases *sub judice.* The guaranty there dealt with was of the principal and interest of a bond issue, and, in the present instance, is of dividends on preferred stock. In *People* v. *Metropolitan Surety Co., 205 N. Y. 135; 98 N. E. Rep. 412,* the court of appeals of New York, although excluding participation of holders of contingent obligations in assets on a par with creditors holding certain claims, said:

"They (that is, the orders under review) do not affect his right to share in any surplus which would otherwise be returned to the corporation or paid to its stockholders. They simply exclude him on account of sound public policy, founded on convenience, if not necessity, from sharing in a trust found applicable only to claims in existence when the court through its receiver took possession of the corporate assets. The contest is between creditors of the corporation, not between the claimant and the corporation."

The court modified the orders below so that they would state that they were without prejudice to the right of claimant to share in the surplus, if any, after payment of the provable debts at the date of dissolution. I am firmly of the opinion that the rule ought not to be extended further than its reason requires. Holders of this class of contingent obligations have been recognized as creditors (*Tod* v. *Kentucky Union Land Co., 57 Fed. Rep. 47; Marbury* v. *Kentucky Union Land Co. (Circuit Court of Appeals, Sixth Circuit), 62 Fed. Rep. 335*), and entitled to share with other creditors in assets where a method could be devised of ascertaining the money worth of the claim.

There is great force in the argument of complainants that the legislature never intended to permit a voluntary dissolution of a corporation and the distribution of its assets to stockholders, under the provisions of the statute heretofore referred to, until all of the obligations of the corporation, contingent, or otherwise, should have been adequately provided for and that the terms "debt" and "creditors" used in the sections of the statute dealing with dissolution, include holders of contingent obligations as well as certain, and are synonymous with the words used in section 107 with respect to merger or consolidation, "debts, liabilities and duties."

The words "debt" and "creditors," used in that portion of the Corporation act dealing with insolvency, have been held to have no narrow, restricted or technical meaning. *Rosenbaum* v. *Credit System Co., 61 N. J. Law 543, 548; Spader* v. *Mural Decoration Manufacturing Co., 47 N. J. Eq. 18; Bolles* v. *Crescent Drug and Chemical Co., 53 N. J. Eq. 614; Lehigh and Wilkesbarre Co.* v. *Stevens & Condit Transportation Co., 63 N.*

*J. Eq. 107.* It is not because of any technical signification of the words "debt" or "creditor" that courts have been constrained to rule that holders of contingent obligations cannot in case of insolvency prove against assets. It is because of sheer necessity.

It may well be, therefore, that in those sections of the act dealing with voluntary dissolution the words "debt" and "creditor" must be held to include holders of contingent obligations, for the rule of necessity does not apply. Can it be conceived that the legislature ever intended to give a corporation express power to enter into such contracts and at the same time give its stockholders express power to, whenever they elect, avoid the contracts by voluntary dissolution, leaving the other parties to the contracts (where they have parted with valuable consideration of which the stockholders have the advantage) to the inadequate remedy of, at some subsequent time, when the contingent liabilities have ripened into certain, suing the dissolved corporation and then following its assets and its stockholders? A corporation might enter into a contract of guaranty to run for twenty years and might receive the sum of $100,000, the next day, or shortly thereafter, proceedings might be taken to dissolve it, the $100,000 might be distributed among its stockholders and the holders of the guaranty left helpless. The language of Mr. Justice Parker, in *Hould v. Squire & Co., 81 N. J. Law 103, 105,* is as applicable here as it was to the case then before the court. He was dealing with the right of a holder of a contingent obligation to sue a corporation after dissolution, and, determining that he could, he said:

"To hold otherwise would enable a corporation to defeat valid causes of action for heavy damages by the simple expedient of dissolution and organization of a new corporation taking over the assets of the old one."

To hold that a corporation after entering into contracts of guaranty may be dissolved by its stockholders without regard to the rights of the guaranteed would, in my view, permit a situation to exist as unjust as that denounced by Mr. Justice Parker. The language of Vice-Chancellor Stevenson, in *Hoopes v. Basic Co., supra,* with respect to the qualifications a credi-

tor must possess in order to institute proceedings in insolvency, has no application to what I am now discussing. What the vice-chancellor said, I think, was *obiter.* It may be that in order to institute the equitable *quo warranto* provided for under the statute that a creditor must be such as, at least *prima facie,* is entitled to an immediate payment out of assets, but I can hardly believe that the holder of a contingent obligation is not entitled upon voluntary dissolution to intervene for the protection of the trust fund, the assets of the corporation, which is the security for the performance of the contingent liability.

The conclusion which I have reached, however, makes it unnecessary to pass upon the broad question as to whether or not, under any circumstances, the stockholders of a corporation which has entered into contingent obligations will be permitted to dissolve it without making adequate provision for such obligations. I think the stockholders have effectively estopped themselves from exercising their right under the statute in the manner in which they are now attempting to exercise it. The contracts of guaranty, stamped upon the back of each of the certificates of preferred stock, the dividends upon which were guaranteed, contain this provision:

"This guaranty shall be irrevocable. No voluntary or involuntary dissolution or merger or consolidation of said Industrial Co. or of the first party shall, except by and with the written consent of the holders of record of all said preferred stock outstanding at the time, release, discharge, modify or affect said guaranty in any way."

Defendants insist that this clause indicates that the parties had in contemplation that there might be a voluntary dissolution, that the clause was inserted to avoid what counsel indicated was the law of New York, *i. e.,* that upon voluntary dissolution such a contract would become absolutely null and void so that no relief could be had by following assets or proceeding against stockholders—that the intent of the parties was merely to preserve such rights. I cannot believe that, as matter of fact, this was the understanding of the holders of the stock. I have already indicated that such a remedy would be inadequate, and I do not believe that the holders of the guaranteed stock ever assumed that they were receiving such practically worthless ob-

ligations. My construction of the clause is that the parties agreed that no proceedings should be taken which would "release, discharge, modify or affect" the guaranty; that if voluntary proceedings in dissolution cannot be taken without affecting the guaranty, the Distilling Company and its stockholders contracted that no such proceedings should be taken; that the taking of such proceedings is a breach of the contract which this court may prevent because of the inadequate remedy at law. While it may be true that, as matter of law, voluntary dissolution does not discharge or release the contract of guaranty nor modify its terms, yet it clearly affects it, and that in a most vital particular, i. e., the remedy to which the holders of the guaranteed stock would be entitled; that a corporation or its stockholders may estop themselves from exercising statutory rights needs no citation of authority.

There is no want of jurisdiction or of power in this court. The court may enjoin a defendant from disenabling himself from performing a continuing contract. *Hooper v. Broderick, 9 L. J. Ch. (N. S.) 321; 59 Eng. Reprint 791; DeMattos v. Gibson, 4 De G. & J. 276; 28 L. J. Ch. 165, 498; 45 Eng. Reprint 108; Cockrell v. Warner, 14 Ark. 345; Southern Railway Co. v. Franklin and Pittsylvania Rd. Co., 96 Va. 693; 32 S. E. Rep. 485; 44 L. R. A. 297.* Dissolution of corporations has been prevented. *Fisk v. Railroad Company, 10 Blatchf. 518; Fed. Cas. 4830,* referred to in *Louisiana State Lottery Co. v. Fitzpatrick, 3 Wood 222; Fed. Cas. 8541; Kessler v. Continental Construction and Improvement Co., 42 Fed. Rep. 258.* While it may be said that these cases are not directly in point, yet they recognize the jurisdiction of a court of equity to enjoin a party from disenabling himself from performing a contract and the power of the court to enjoin the dissolution of a corporation.

Mr. Justice Pitney, in *Central Trust Co. of Illinois v. Chicago Auditorium Association, 240 U. S. 581* (at *p. 591*); *60 L. E. 811,* said:

"Commercial credits are, to a large extent, based on the reasonable expectation that pending contracts of acknowledged validity will be performed in due course; and the same principle that entitles the promisee to continued willingness entitles him

to continued ability on the part of the promisor. In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement."

And he, therefore, reaches the conclusion that bankruptcy proceedings are an equivalent of an anticipatory breach of a continuing agreement.

A promisee being entitled, as matter of law, to continued willingness and continued ability on the part of the promisor has, upon the promisor's disenabling himself, an action at law for damages, but he also may go into a court of equity to enjoin the promisor from voluntarily disenabling himself if the remedy at law for the breach be inadequate, as in these cases. The court is, of course, without power to prevent bankruptcy or insolvency just as it is without power to prevent a man who has deliberately asserted that he intends to commit suicide in order that his estate may be distributed without regard to contingent obligations from carrying out his threat, because its decree would be ineffective. There is no such want of power, however, to prevent a corporation from dissolving if equitable consideration requires that this should be done.

Much confusion has been created by a failure to distinguish between lack of jurisdiction and lack of power to enforce a decree or order. So long as courts of equity are to serve the purpose of the creation of the court of chancery of England, and in this state the court of chancery, is the successor, in all that such terms implies, of that court, jurisdiction must depend only upon the existence of, or a threatened, wrong, and the absence of an adequate remedy at law. The court has full and complete jurisdiction, if there be no adequate remedy at law, to compel a singer to perform his contract, to compel an inn keeper to keep open an inn, to compel a person to so act as to continue solvent in order to permit the performance of a contract, and cases of like nature. The court will not act, however, directly in such cases because its order or decree would be

wholly ineffective. It is, therefore, often improperly said to lack jurisdiction; that this is not so is clearly indicated by the fact that if a negative order or decree would be effective, the court grants it. Due to our habit of endeavoring to find decided cases to fit each situation, we too often overlook the fundamental reasons for the creation or evolution of the court. It received no grant of express powers nor were express duties imposed upon it. The law courts were left to deal with the violation of all rights for which they could give an adequate remedy. The duty of relieving against any remaining wrongs was imposed upon the court of chancery. If equity is to be held bound by fixed rules and limitations of jurisdiction as law is, there will be the necessity of a third court to serve, as to equity, the purpose of the institution of equity as to law. In the cases *sub judice* I have found the existence of a threatened wrong, and the absence of an adequate remedy at law which gives jurisdiction, and no obstacle against the exercise of such jurisdiction.

Courts have intervened for the protection of contingent rights. *Van Duyne* v. *Vreeland, 12 N. J. Eq. 142; Flight* v. *Cook, 2 Ves. Sr. 619; 28 Eng. Reprint 394.*

*Bijur* v. *Standard Distilling and Distributing Co., 74 N. J. Eq. 546,* presents no obstacle to the granting of relief. In that case Vice-Chancellor Emery held that there was no remaining obligation on the part of the company to enforce, and secondly, that the estoppel claimed, which was based on fraud, had not been proven. That there is no precedent will not prevent a court of equity from acting. *Earle* v. *American Sugar Refining Co., 74 N. J. Eq. 751,* where the present chancellor, then vice-chancellor, said the principles of equity will be applied to new cases as they are presented, and relief will not be withheld merely on the ground that no precedent can be found. And he reiterated this in *Palmer* v. *Palmer, 84 N. J. Eq. 550.*

The factors in this case which distinguish it from any other brought to my attention are, first, the corporation was expressly authorized to enter into the contracts; second, the stockholders of the corporation approved the contracts; third, the contracts were for valuable considerations executed and the parties can-

not be put in *status quo;* fourth, the corporation and its stockholders expressly contracted that no voluntary dissolution would affect the contracts.

I have concluded, therefore, to deny the motions to dismiss the Allen and Industrial Company bills and to enjoin the dissolution of the Distilling Company. This results in making unnecessary and improper any expression of opinion upon the merits of the Rice bill. I am of the opinion, resting upon the jurisdiction of this court to enjoin a person from disenabling himself to perform a contract where the remedy at law is inadequate, to enjoin a breach of a contract and to compel its specific performance where there is no adequate remedy at law, and to protect the rights of *cestui que trustents* in trust funds, that the dissolution of the corporation may be prevented. I am unwilling to say whether I would or would not be inclined to grant relief under the Rice bill if I am wrong in enjoining dissolution. The fact that dissolution has been enjoined, however, removes from the Rice bill its element of anticipated damage, and no order, therefore, can be made under it. I am sorry for this because I had hoped that all three cases might go to the court of errors and appeals at one time. I have asked counsel to devise some plan and both they and I have failed. I have concluded, however, not to dismiss the Rice bill but to postpone consideration of it until such time as the court of errors and appeals may pass upon the Allen and Industrial Company bills, or it is evident that no appeals are to be taken. The orders, therefore, will be in the Allen and Industrial Company cases denying the motions to strike out making the orders to show cause absolute and granting the injunction asked for. In the Rice bill the order will be that consideration of the case be postponed, but that either party may have the right to bring it on or to make such applications as they see fit upon five days' notice.