## MARKS *v.* F. G. BARTON COTTON COMPANY.

### Opinion delivered March 1, 1926.

1. EQUITY—JURISDICTION OF CROSS-BILL.—Where a factor brought suit in equity to recover an amount due on open account, and to have a lien declared on certain bales of cotton belonging to defendants in the factor's possession, and defendants filed a cross-bill asking for an accounting, the original and the cross-bill are but one cause, and equity properly retained jurisdiction.

2. FACTORS—DUTY TOWARD PRINCIPAL.—It is the duty of a cotton factor in transactions affecting the subject-matter of his agency to act with good faith and loyalty for the protection and advancement of his principal's interests, and to obey the instructions of his principal where they are definite and certain, and do not impair his security for advances.

Appeal from White Chancery Court; *John E. Martineau*, Chancellor; affirmed.

STATEMENT BY THE COURT.

F. G. Barton Cotton Company brought this suit in equity against F. K. Marks & Son to recover the sum of $2,675.85, and asked that the plaintiff have a lien on 56 bales of cotton in its possession belonging to the defendants for the payment of the same.

According to the allegations of the complaint, the plaintiff is a cotton factor, in the city of Memphis, Tenn., and made advances to the defendants, and the defendants shipped 115 bales of cotton to be sold for them, and applied to the payment of said indebtedness.

R. B. Barton, vice president of the F. G. Barton Cotton Company, a corporation, was its principal witness. According to his testimony, the plaintiff made advances to the defendants. The latter shipped to the former cotton from time to time, to be sold and applied upon said indebtedness, and the balance, if any, to be paid to the defendants. On the 20th of January, 1922, the plaintiff rendered an itemized account to the defendants, showing a balance due it of $2,675.85. The account showed that the defendants had shipped to the plaintiff altogether 115 bales of cotton, and had rendered an account of sale of 110 bales. This left five bales still on hand. On March 10, 1920, the defendants wrote to the plaintiff with regard to the re-weight of the cotton at Memphis, and stated that they trusted that they might soon receive a notice of sale of some of their cotton at 40 cents. On March 13, 1920, the defendants wrote to the plaintiff a letter which reads as follows:

"Gentlemen: It seems to me that the present time is a good time to sell cotton. I wish you would put mine on the market, and sell as fast as you possibly can. If we should have a dry spring, as I look for, the prices will decline wonderfully. However prices are not up to normal yet, and I don't expect them to get any better. Thanking you for any favors that you may show us, I am, very truly yours."

On March 15, 1920, the plaintiff wrote a letter in reply, which reads as follows:

"Gentlemen: We have your letter of the 13th inst., and in reply wish to concur in your opinion that it is a good time to dispose of cotton. The demand, however, is limited to particular grades and staples. There is no buyer in this market who will purchase over 25 or 75 bales of cotton at one time, from one person, and he wants that purchase made on a sacrifice basis, except where there are particular cottons that are wanted badly. There is nothing to be gained in making these little sales of just a few bales where the price must be cut, because the next day the same buyer is afte̲  ̅ou again, with another cut. The only thing we can do under these conditions is to wait for a general demand, and, even though the market should decline some, we would still be able to get as good prices as are now offered. With kindest regards, we are, yours very truly."

On the 17th day of March, 1920, F. K. Marks had a telephone conversation with R. B. Barton about the sale of the cotton. We quote from the record the version of the conversation given by F. K. Marks as follows:.

"I asked Mr. Barton what did he consider a satisfactory price on the cotton—we wanted a satisfactory price, and he said, 'Cotton ought to be worth around forty to fifty cents.' I said, 'What is such class of cotton as mine bringing on the market now?' He said, 'From thirty-five to forty-five cents.' I said, 'I want you to sell my cotton if it don't bring but thirty cents; I don't want to carry it,' and he said, 'It will be hard to do.' I said, 'It won't be hard to get thirty cents for it, I know.' He said, 'We will do the best we can.'"

According to the testimony of Olga Doss, the stenographer of F. K. Marks, she heard the telephone conversation between Marks and Barton on March 17, 1920, with reference to the sale of the cotton. Her recollection of the conversation is that Marks told Barton to sell their cotton if he could not get more than thirty cents for it. R. B. Barton was recalled as a witness, and testified that

he did not remember the conversation with Marks definitely, but recollected that he used every possible effort to sell the cotton of the defendants, as well as that belonging to the other customers of the plaintiff. He stated that there was between thirty and forty per cent. of the crop of 1919 which was carried over in Memphis. The plaintiff made every possible effort to sell the cotton of the defendants, and did sell it for them as soon as there was a demand, and at a price that the defendants did not object to. He was not able to sell the cotton for any price at the time referred to, for the reason that there were no buyers on the market who would purchase more than from 25 to 75 bales of cotton at one time, and that the purchase in this kind of a case even was made by the cotton buyers on a sacrifice basis. The only thing under the circumstances that the cotton factors could do was to wait for a general demand for the cotton of their customers.

On July 8, 1920, the plaintiff wrote to the defendants a letter in reply to a letter from the plaintiff requesting information about the payment of the taxes on the cotton shipped. On October 2, 1920, the plaintiff wrote to the defendant a letter which reads as follows:

"Gentlemen: Our books on this date show that you owe us $5,273, and that we have fifty-six bales of cotton in our hands to be applied to your credit. The new cotton season is opening, and we are expecting to hear from you with a shipment, and trust that we may receive a bill of lading soon, covering a shipment of your cotton. We have been carrying this cotton for some time, with the hope of getting a satisfactory price for it, and, as the new cotton is about to move, we feel that our shippers ought to send us in some new cotton to be sold and the proceeds credited to their account, and thus relieve the burden of carrying the old cotton to some extent. Please let us have a letter from you, stating when we may have a shipment, and how much we may expect. Yours very truly."

The chancellor found the issues in favor of the plaintiff, and a decree was entered in favor of the plaintiff in accordance with his findings.

*J. N. Rachels,* for appellant.

*John E. Miller* and *Mann & Mann,* for appellee.

HART, J., (after stating the facts). The defendants filed a motion to transfer the case to the circuit court, and duly excepted to the action of the chancery court in refusing to grant their motion.

It is first contended by counsel for the defendants that the allegations of the complaint were not sufficient to give the chancery court jurisdiction, and that the chancery court erred in not granting their motion to transfer the case to the circuit court. Conceding that the chancery court did not have jurisdiction under the allegations of the complaint, it does not follow that error was committed in refusing to transfer the case to the circuit court. The defendants filed a cross-complaint, in which it is alleged that the plaintiff had in its hands the exact date of all of the cotton shipped to it by the defendant, and was in possession of the market value of said cotton, upon the date of its arrival. They asked that it be required to state the date of the arrival and value of each bale of cotton, and its grade. They alleged that the plaintiff was ordered to sell the cotton immediately upon its delivery to it, and in effect they asked for an accounting by the plaintiff, and damages for failing to sell the cotton according to directions.

Their cross-bill was founded on matters clearly cognizable in equity, and this supplied any defect of jurisdiction. The original complaint and cross-bill were but one cause of action, and imposed upon the court the duty of granting relief to the party entitled to it. *Cockrell v. Warner,* 14 Ark. 345; *Sale v. McLean,* 29 Ark. 612; *Radcliffe v. Scruggs,* 46 Ark. 96; and *Hall v. Huff,* 114 Ark. 206.

The reason for the rule is clearly stated in *Cockrell v. Warner,* 14 Ark. 345, where the court closed a review

of the authorities on the question with the following: "These authorities will suffice to demonstrate that the original and cross-bill are but one cause; that both parties are as complainants, praying relief against each other, and having in view the object of bringing the whole controversy before the court, to the end that it may be finally settled on the merits, by such decree as the justice and equity of the case may require. In attaining this end, it must frequently happen that mere legal demands on, the one side or other, over which separately a court of equity would have no jurisdiction, have to be passed on, and relief afforded. But this, so far from being objectionable, is commendable, because it has a tendency to prevent a multiplicity of suits, in itself sufficient to give a court of equity jurisdiction, although the subject-matter otherwise may be of a legal nature and of legal cognizance."

Therefore the chancery court did not err in refusing to transfer the case to the circuit court.

On the merits of the case, the chancellor found the facts in favor of the plaintiff, and his finding is borne out by the evidence in the record. On this branch of the case it may be stated, at the outset, that it is the duty of a cotton factor, in all transactions affecting the subject-matter of his agency, to act with good faith and loyalty for the protection and advancement of the interests of his principal, and it is his duty to obey the instructions of his principal, where they are definite and certain, and do not impair his security for advances. *Burke* v. *Napoleon Hill Cotton Co.,* 134 Ark. 580; *Joy Rice Milling Co.* v. *Brown,* 167 Ark. 205; and *Brown* v. *Southern Grocery Co.,* 168 Ark. 547.

Counsel for the defendants rely upon the telephone conversation between F. K. Marks and R. B. Barton, had on the 17th day of March, 1920. To come to a full understanding of the matter, it was necessary for the chancellor to consider everything that passed between the parties. In transactions of this sort consisting of

letters, accounts, and verbal communications, the written and parol evidence throw light on each other. This was the case here. The parties had made an arrangement whereby the defendants were to ship cotton to the plaintiff, and the latter was to make certain advances on the cotton shipped. In the telephone conversation, it is apparent that the defendants did not wish the cotton to be sold, unless all of it could be sold at not less than thirty cents per pound.

According to the testimony of R. B. Barton, which is not contradicted in this respect, the plaintiff could not sell all of the cotton, or even the most of it, at that price. There was simply no market at the time for this grade of cotton. The plaintiff sold the cotton for the best price obtainable, and, so far as the record discloses, acted in good faith throughout the whole transaction. His testimony in this respect is corroborated by the subsequent correspondence between the parties.

On July 7, 1920, F. K. Marks wrote to the plaintiff, asking for advice about paying taxes on the cotton, and whether or not the plaintiff could pay them at Memphis. He closes the letter by asking for the outlook in the future on cotton. On the 2d of October the plaintiff notified the defendants that it still had on hand fifty-six bales of cotton, and that their indebtedness amounted to $5,273. It reminded the defendant that it had been carrying the cotton for some time, and that some new cotton should be shipped in, and applied to the old account. On October 13, 1920, the defendant answered this letter as follows:

"In answer to your letter a few days ago in regard to shipping you some more cotton. In reply to same will advise you that we cannot ship you any cotton at the present time. However we hope to get in a position to ship you a little cotton this season. But at the present time we have no money to pay for cotton. The way we are buying now is to sell in the morning, and buy during the day, however we are making about $150 a week. We

have a long staple cotton in this country 3-16. What can
you get on this cotton on your market at a ready sale?
Now that will be the only way we can. sell cotton for two
or three months, that is ready sale, because, as slow as it
is moving, from $600 to $1,000 a month is all we are mak-
ing. As quick as you can move that cotton over here, I
think we will all be better off. Do not feel shaky if our
account over there falls behind. All the hard luck you
will strike is being out of your money for awhile. Here's
hoping that this cotton will bring enough to pay expenses.
Thanking you for the many past favors, I am."

This letter shows conclusively that the defendants
recognized that the plaintiff had been acting in good
faith throughout the whole transaction, and that its con-
duct with regard to the sale of the cotton, and the
amounts due the plaintiff, was acknowledged and
approved. It will be noted that the letter contains the
following: "As quick as you can move that cotton over
there, I think we will all be better off." This is a direct
and explicit recognition of the fact that the plaintiff had
on hand fifty-six bales of cotton, to be applied to the
credit of the defendants, and that its books showed that
the defendant owed the plaintiff $5,273 on October 2, 1920.

Upon the whole record, we think that it can not be
said that the finding of the chancellor is against the pre-
ponderance of the evidence, and the decree will there-
fore be affirmed.