This matter is now before the court on complainants' application for an order to require the defendant Public Service Co-ordinated Transport to show cause why a temporary injunction should not issue to restrain it from putting into effect on January 1st, 1930, an increased rate of fare for *Page 440 
transportation of passengers on its street railways and buses, as per schedule filed November 21st, 1929, with the board of public utility commissioners, and to require said board to show cause why a temporary injunction should not issue to restrain it from permitting such increase of fare to take effect until a public hearing be afforded the complainants and other parties in interest. The above-named solicitors for the township of North Bergen, city of Jersey City and city of Bayonne, requested and were granted leave to join as complainants herein. The matters were argued and considered together. For brevity and convenience Public Service Co-ordinated Transport will be hereinafter mentioned as the utility, and the Board of Public Utility Commissioners as the board. The complainants aver that the utility, a public utility corporation, operating street railways and buses on the public streets of the several municipalities above named, filed with the board on November 21st, 1929, a schedule of increased rates of fare for transportation of passengers, to be charged by said utility on and after January 1st, 1930. Said schedule evidences that the utility contemplated a ten-cent cash fare, giving to its patrons the option to purchase twenty tokens for one dollar, each token to be good where a five-cent fare is now charged. The utility filed with its aforesaid schedule a letter and a petition setting forth reasons urged to justify its action, and therein requested that the proposed increase be allowed to go into effect on January 1st, 1930, without suspension. Section 17, subdivision (h) of an act concerning public utilities (chapter 195, laws of 1911, as amended and supplemented), provides that when any public utility as in said act defined shall increase any existing rate, the board shall have power either upon written complaint or upon its own initiative to hear and determine whether the said increase is just and reasonable. The burden of proof to show that the increase is just and reasonable is imposed upon the utility. The board is empowered pending such hearing and determination to order the suspension of said increase until it shall approve same, such suspension to be in the first instance for a period of not exceeding three *Page 441 
months, and if the hearing be not concluded within such time, a further suspension for not exceeding three months is allowable. The board, upon being satisfied that the proposed increase of rate is just and reasonable is obliged to approve same. The board did not follow the prescribed procedure in the matters subjudice. On December 4th, 1929, the president of the board addressed a letter to the president of the utility in which, among other things, he said: "The problem that confronts the board is this: There seems to be no reasonable basis upon which a fair estimate could be made as to the number of riders affected by your proposal and its consequent result on the revenues of the company. How extensively the occasional rider would make use of your facilities by paying a cash fare as against the purchase of tokens seems to be too problematical to estimate. All riders on buses or trolley, under your proposal, may continue to pay the same rate of fare by the purchase of tokens. * * * The board is not willing to accept the change in fare as proposed. It will approve of a charge of a ten-cent cash fare, giving all riders the option to purchase tokens at the rate of ten for fifty cents, the change in fare to become effective January 1st, 1930, as proposed by you and to be effective only as an experiment for such time as the results can be reasonably estimated. * * * Pending the foregoing experiment, there will be reserved to all municipalities and other interested parties the right to be heard as soon as reasonably definite results are ascertained." The complainants aver that the utility filed with the board an acceptance of the terms mentioned in the foregoing letter, and, notwithstanding protests to the board by complainants and others charging non-compliance with the law, unreasonableness of the proposed increase, failure to afford a public hearing, and failure by its order to approve such increase, said board has acquiesced in the utility putting the increase in rate in effect on January 1st, 1930.
Novel indeed, to say the least, is the means whereby the proposed increase in rate of fare is allowed by the board to become effective. Whether such means be legally justified *Page 442 
must be determined by the supreme court. This court is unauthorized to make such determination. There is no authority expressed in the Utility act conferring upon the board the right to allow the utility to put into effect an experimental rate as contemplated. Defendants' counsel assert, however, that the board has authority therefor. It appears that Mr. Justice Kalisch, on December 21st, 1929, after argument upon a rule to show cause why a writ of certiorari should not be allowed for a review of the matters in controversy, referred the matter to the supreme courtin banc. It is said that said court will not regularly convene until February 21st, 1930, and that counsel for the complainants sought the three justices who comprise part 2 of the present term of said court, wherein certiorari proceedings are heard and determined, and ascertained that two of said justices were not now available and would not be available before January 1st, 1930. Such difficulty will not avail complainants in this court.
Section 38 of the Utility act expressly provides for a review by the supreme court of any order of the board and confers upon said court jursidiction to set aside, on review, any order made by said board when it clearly appears there was no evidence before the board to support reasonably the same, or that the same was without the jurisdiction of the board. And if it appears to said court equitable and just that a rehearing should be had before the board it may order that such rehearing be had upon such terms as are reasonable. Manifestly, therefore, it is for the supreme court to determine whether the order (or action) of the board of which the complainants claim they are aggrieved was based upon statutory authority. If the supreme court determines that the act complained of was not based upon statutory authority, or that inaction of the board contravened such authority, said court may be relied upon to properly adjudicate thereon. Said court may likewise be relied upon to determine whether the above-mentioned letter addressed by the president of the board to the president of the utility may be regarded as tantamount to an order of said board within the purview of *Page 443 
the Utility act, supra, and if not so regarded whether it be of any legal significance whatever. Counsel for the complainants in their quest for injunctive relief apparently rely upon the rule of law as established in states where special statutory agencies have not been created by the legislature for the fixing and regulation of rates for public utilities. It is a well-established rule of law in states where rates for public utilities are fixed and regulated by the legislature, or by special statutory agencies created by the legislature therefor, that the courts have no jurisdiction over rates as such, and unless some constitutional right or legal infirmity in proceedings by which a rate is fixed, is involved, the courts have no jurisdiction or power to interfere with a rate which is, in fact, sanctioned by the legislature, or by a body created by the legislature — empowered to sanction same. That the fixing and regulation of rates for public utilities is clearly a legislative function has been well established in law. The court of chancery, under existing laws, has no jurisdiction whatever with respect thereto. Judicial power, such as may be exercised, can be exercised only by the supreme court. That this court has power to relieve against all wrongs for which the law gives no adequate remedy is beyond question. Allen v. Distilling Co., 87 N.J. Eq. 531,
cited in Lehigh Valley Railroad Co. v. Board ofPublic Utility Commissioners of New Jersey, 278 U.S. 24;49 Sup. Ct. Rep. 69. Both of the aforesaid cases were cited by me in Inre Hague, 104 N.J. Eq. 31; 144 Atl. Rep. 546. If the complainants were without adequate remedy at law this court might afford relief. As stated in Earle v. American Sugar, c., Co.,74 N.J. Eq. 751 (at p. 761), by Chancellor Walker (then vice-chancellor): "The absence of precedents or novelty in incident presents no obstacle to the exercise of the jurisdiction of a court of equity. It is no objection to the exercise of jurisdiction that, in the everchanging phases of social relations, a new case is presented and new features of wrong are involved." And in Allen v. Distilling Co. of America, supra
(at p. 543), it is said: "So long as courts of equity are to serve the purpose of the creation of the court of chancery of England, and in *Page 444 
this state the court of chancery, is the successor, in all that such term implies, of that court, jurisdiction must depend only upon the existence of, or a threatened, wrong, and the absence of an adequate remedy at law." In the matters sub judice the legislature having expressly provided adequate redress by our supreme court, to that tribunal the complainants must have recourse. Section 39 of the Utility act, supra, provides that the allowance of a writ of certiorari to review an order of the board shall in no case supersede or stay the order of the board, unless the supreme court, or a justice thereof, shall so direct. And that the appellant may be required to give bond in such form and in such amount as the supreme court, or the justice thereof allowing the stay, shall require. Such provisions (the aforesaid letter of December 4th, 1929, purporting to modify the schedule of increased rates proposed by the utility — which modification the utility filed an acceptance of with the board — is regarded by me merely for the purpose of the matter sub judice as substantially an order of the board) are indicative that this court should not assume jurisdiction to in anywise interfere adversely with the acts of said board, particularly in view of the fact that a supreme court justice — after a hearing before him in the certiorari proceedings aforesaid — refused to stay the operation of the proposed increase in rate of fare pending the time when complainants may obtain action in the supreme courtin banc. It is urged that complainants will not be afforded an opportunity of having the supreme court pass upon the legality of the acts of the defendants prior to January 1st, 1930. Such contention is mere conjecture. I cannot accede thereto. I cannot conceive that the supreme court, or part 2 thereof, may not be readily reconvened for the purpose of determining the matter in question if complainants can satisfy the court that their cause of complaint is sufficiently meritorious and exigent in the public interest to warrant the special attention of such court. The object of a preliminary injunction, and likewise a stay incertiorari proceedings, is to preserve the subject-matter in controversy, without determining any question of right. Manifestly the *Page 445 
result sought to be accomplished in the matters sub judice may be obtained through the supreme court, or a justice thereof, under the authority of section 39 of the Utility act, supra. I am constrained in my consideration and determination of the application now before me to observe the cautionary words of Judge Baldwin — quoted in the oft-cited case of Citizens CoachCo. v. Camden Horse Railroad Co., 29 N.J. Eq. 299 (at p.303): "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless in cases of great injury, where the courts of law cannot afford an adequate * * * remedy * * *," which in my judgment are particularly applicable to the matters sub judice. If this court should grant the preliminary injunction sought by complainants, such, in effect, would be tantamount to a mandatory injunction to require the utility tomaintain its present rate of fare pending complainants' appeal to the supreme court. Aside from the fact that the board has ample authority, if exercised, to effectuate such purpose, I have in mind that such injunctions are rarely granted before final hearing, are always granted cautiously, and are strictly confined to cases where the remedy at law is not only inadequate but the necessity therefor extreme. Spoor-Thompson Machine Co. v.Bennett Film Laboratories Co., 105 N.J. Eq. 108;147 Atl. Rep. 202, and cases therein cited, among which, McCran v. PublicService Railway Co., 95 N.J. Eq. 22. The McCran Case, supra, cited by counsel for the complainants, and the case of McCran
v. Western Union Tel. Co., 94 N.J. Eq. 281, both of which I have considered, are inapplicable in my judgment to the matterssub judice. The complainants, in the matters sub judice, would have this court stay by injunction the operation of the proposed increase in rates until such time as complainants may resort to the supreme court in banc for relief. In Clark v.Board of Education of Bayonne, 76 N.J. Eq. 326 (at p. 328), the court of errors and appeals declared: *Page 446 
"The question is squarely presented as to whether a court of chancery has jurisdiction to interfere in proceedings in a court of law where the case is one within the jurisdiction of that court, and where no independent equity is shown except the claim that the complainant is in good faith seeking to review the judgment of the court of law and has been unable to secure from any law court a stay pending the appeal. The learned vice-chancellor below was constrained to follow the only equity precedent in this state, where another vice-chancellor allowed an injunction under similar circumstances in order to preserve thestatus quo of the litigation until the appeal could be heard.People's Traction Co. v. Central Passenger Railway Co.,67 N.J. Eq. (1 Robb.) 370. That case we decline to approve and overrule it as unsound. * * * The question as to the stay and the applicant's right thereto, which is erroneously declared in thePeople's Traction Company Case to constitute an independent equity, on the contrary involves but a mere step in procedure in the law action, to be applied in the exercise of an equitable jurisdiction in that court and not in the court of equity. The court of chancery has no jurisdiction to interfere with a judgment of the supreme court except where some well-defined independent equitable ground exists for restraining the enforcement thereof. That an unsuccessful litigant in a court of law has appealed therefrom and is unable meanwhile to secure from any law court a restraint against further proceedings under the judgment below, is not, as declared in People's Traction Co. v.Central Passenger Railway Co., supra, an independent equity which gives the court of chancery jurisdiction to interfere, although such proceedings under the judgment may result in such a change in the status of the subject-matter of the controversy as may make nugatory the judgment of the court of review when pronounced."
I will advise an order denying the order to show cause sought by the complainants herein. *Page 447