CITY OF DETROIT *v.* MICHIGAN PUBLIC UTILITIES COMMISSION.

1. PUBLIC SERVICE—GAS RATES FIXED BY VALID AGREEMENT OR FRANCHISE.

   The public utilities commission has no power to change or alter gas rates fixed by valid agreement or franchise granted or made by a city (2 Comp. Laws 1929, § 11009, as amended by Act No. 138, Pub. Acts 1931).

2. MUNICIPAL CORPORATIONS—POWERS.

   A municipal corporation possesses only those powers expressly granted, those necessarily or fairly implied in or incidental to the powers expressly granted, and those essential to the de-

clared objects and purposes of the corporation, the latter consisting of powers not simply convenient to the exercise of the declared objects but those indispensable thereto.

3. SAME—POWER TO REGULATE RATES OF PUBLIC UTILITIES.

Since no express power is given a city to regulate the rates of public utilities and such power is not one of those essential to local self-government, it arises only from the exercise of powers necessarily implied.

4. SAME—POWER TO FIX REASONABLE RATES FOR USE OF STREETS BY PUBLIC UTILITY.

Under the Constitution a city has the power to fix reasonable rates as a condition to the use of its streets by a public utility (Const. 1908, art. 8, § 28).

5. SAME—USE OF STREETS—CONTRACTS A PART OF FRANCHISE—GAS.

The right of a city to contract with reference to gas rates depends upon its right to the control of its streets and any contract made regarding rates is a part of a franchise granted to a utility to use the streets (Const. 1908, art. 8, § 28).

6. SAME—FRANCHISES—APPROVAL OF ELECTORS.

After the expiration of a gas company's original franchise, an agreement between it and the city attempting to fix rates for three years thereafter would have to have the .approval of three fifths of the electors to be valid, since such an agreement amounts to a franchise (Const. 1908, art. 8, § 25).

7. SAME—CONSENT DECREE—REVOCATION—FRANCHISES—APPROVAL OF ELECTORS.

Consent decree in suit between gas company and city, which embodied agreement that *status quo* as to legal and equitable rights of respective parties was to be maintained, and provided that profits above a certain base earning were to be divided with consumers for whom company would, and did afterwards, promulgate a schedule of rates, and further provided that terms of the decree were subject to modification by the court after application by either party and hearing thereon and that the court should be the forum for determination of controversies between the parties until they should discontinue the operation of the decree, not being a contract revocable at will by city, resulted in a franchise which, under the Constitution, requires approval of the electors to be valid (Const. 1908, art. 8, § 25).

8. PUBLIC SERVICE—"RATES"—CONTRACT AND LEGISLATIVE DEFINITION.

The word "rates" may be said to denote the price stated or fixed for some commodity or service of general need or utility supplied to the public, measured by a specified unit or standard and classified as contract or administrative rates when voluntarily fixed or agreed upon between the contracting parties, and as legislative rates when fixed by the legislature or its authorized agency without consent or agreement of the parties.

9. SAME—CONTRACTS—GAS RATES—CONSENT DECREES.

Agreement between city and gas company, embodied in a consent decree terminating the litigation between the parties, whereby company agreed to divide profits above a certain base earning and promulgate, in the future, a schedule of rates for consumers *held,* not to constitute a contract or franchise between the parties fixing rates.

10. GAS—REASONABILITY OF RATES—DETERMINATION BY COURT.

A circuit court has jurisdiction to determine whether gas rates are unreasonable where there is no contract therefor and there are no proceedings before the public utilities commission.

11. COURTS—JURISDICTION OF SUBJECT MATTER—CONSENT.

Parties, by consent or conduct, cannot give the court jurisdiction over the subject matter where it otherwise would have none.

12. PUBLIC SERVICE—FIXING RATES—MUNICIPAL CORPORATIONS—LEGISLATIVE FUNCTION.

The power of fixing and regulating rates for public utilities, although it may be delegated to a city to contract with reference thereto, is a legislative function and not a judicial one.

13. GAS—JURISDICTION AS TO RATES—COURTS—PUBLIC UTILITIES COMMISSION.

Fact that a court may have jurisdiction to determine reasonableness of existing gas rates does not empower it to retain jurisdiction in a case between city and gas company to determine whether rates to be promulgated in the future would be unreasonable since to permit a court to retain such jurisdiction would be to oust the public utilities commission of jurisdiction conferred upon it to do so where no franchise was in existence (2 Comp. Laws 1929, § 11009, as amended by Act No. 138, Pub. Acts 1931).

14. MUNICIPAL CORPORATIONS—PUBLIC UTILITY RATES—FRANCHISE
—LEGISLATURE—CONSTITUTIONAL LAW—CONTROL OF STREETS.

Municipal corporations can establish rates by contract and fran-
chise but have no legislative power to fix charges to be made by
public utility companies except as the legislature, which has the
primary authority to fix such rates, may delegate such power
either expressly or by necessary implication, and constitutional
provision reserving to municipalities the control of their
streets, alleys and public places does not provide for such a del-
egation of power (Const. 1908, art. 8, § 28).

15. SAME—CONTROL OF STREETS—CONTRACTS FOR PUBLIC UTILITY
RATES.

The reserved constitutional power in a city to the control of its
streets empowers it to contract, not to legislate, for public util-
ity rates; the power to legislate with reference thereto having
been lodged by the legislature in the public utilities commission
(Const. 1908, art. 8, § 28; 2 Comp. Laws 1929, § 11009, as
amended by Act No. 138, Pub. Acts 1931).

16. PUBLIC SERVICE—RATES—COURTS—PUBLIC UTILITIES COMMIS-
SION.

Courts do not have jurisdiction over public utility rates until
they have been submitted to and passed upon by the public
utilities commission having jurisdiction over such rates.

17. SAME—RATES—LEGISLATIVE FUNCTIONS.

The fixing and regulation of rates for public utilities is clearly a
legislative function.

18. GAS—RATES—COURTS—PUBLIC UTILITIES COMMISSION.

In the absence of a valid contract or franchise as to gas rates be-
tween a city and gas company, a circuit court has no jurisdic-
tion to fix or establish rates, and consent decree entered in a
court in an action between such parties would not preclude the
public utilities commission from taking jurisdiction (2 Comp.
Laws 1929, § 11009, as amended by Act No. 138, Pub. Acts
1931).

19. SAME—RATES—CONSENT DECREE IN SUIT BETWEEN CITY AND
GAS COMPANY—JURISDICTION OF PUBLIC UTILITIES COMMISSION.

Pendency of suit between city and gas company not holding a
franchise from city, in which suit a consent decree was entered
whereunder it was sought to have court continue its jurisdic-
tion and regulate rates, which decree had not been approved by
three fifths of the electors, would not preclude exercise of juris-

diction by public utilities commission in which legislature had lodged jurisdiction to fix such rates where no franchise or agreement with respect thereto had been entered into by the parties (2 Comp. Laws 1929, § 11009, as amended by Act No. 138, Pub. Acts 1931).

20. SAME—PUBLIC UTILITIES COMMISSION—POWER TO FIX RATES— PETITION OF CONSUMER.

On the expiration of a gas company's franchise, the public utilities commission has jurisdiction to fix rates on the petition of a consumer (2 Comp. Laws 1929, §§ 11008, 11009, as amended by Act No. 138, Pub. Acts 1931; § 11038).

21. SAME—PETITION OF CONSUMER—JURISDICTION OF RAILROAD AND PUBLIC UTILITIES COMMISSIONS.

Since the public utilities commission is vested with the same measure of jurisdiction as the railroad commission, which latter commission had power to investigate rates either on its own motion or on petition of a consumer, the public utilities commission may exercise jurisdiction on such initiative and may do so with respect to additional subject matter of gas rates specifically added by act creating the commission unless the statute should elsewhere express a contrary intent, and provision that a municipality shall have the right to petition the commission is not such a contrary expression (2 Comp. Laws 1929, §§ 11008, 11009, as amended by Act No. 138, Pub. Acts 1931; § 11038).

22. COURTS—SCOPE OF FORMER DECISIONS.

All the propositions assumed by a court to be within the case before it, and all questions presented and considered and deliberately decided by the court leading up to the final conclusion, are as effectually passed upon as the ultimate questions solved, and the judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it.

23. JUDGMENT—RES JUDICATA—RESERVED MATTERS.

A judgment or decree which expressly excepts or reserves from its operation specified rights or claims of parties in suit, or decisions of questions in issue, or the right to take further proceedings in respect to certain matters, is not a bar to subsequent action on matters so reserved but, on the contrary, the reservation itself becomes *res judicata,* and prevents the raising of any question as to the right to bring or maintain such subsequent suit.

24. Courts—Decisions on Questions Germane to Controversy Not Dictum.

When a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.

25. Same—Decisions Result of Application of Judicial Mind.

All that is necessary to render the decision of a court of last resort authoritative on any point decided is to show that there was an application of the judicial mind to the precise question adjudged.

26. Same—Opinions by Majority.

Views expressed in separate concurring opinions of a court of last resort are the views of the court when it appears that the majority of the court concurred in such separately expressed views.

27. Judgment—Reserved Matter—Res Judicata—Jurisdiction of Public Utilities Commission as to Gas Rates—Petition of Consumer.

Reservation of a gas consumer's right to petition public utilities commission to fix rates, made in a former decision and decree of this court, *held*, *res judicata* of a consumer's right to do so where such point was then before the court, the court intended to declare the rule of law for a guide in the future, there was an application of the judicial mind to the proposition and a thorough consideration of the subject and a majority of the court had the clear intent and expressed purpose of determining such issue.

28. Gas—Consent Decree—Agreement as to Future Promulgation of Rates.

Consent decree in suit between city and gas company whereby the parties therein reached an agreement that gas company could promulgate rates in the future did not constitute a valid contract as to rates as no rates were provided therein.

29. Costs—Public Question—Jurisdiction of Public Utilities Commission on Gas Consumer's Petition.

No costs are allowed on appeal by city and gas company from order of public utilities commission under which it assumed jurisdiction to act on petition of gas consumers in matter of fixing natural gas rates in city after expiration of gas company's franchise, a public question being involved.

Appeal from Michigan Public Utilities Commission. Submitted October 14, 1938. (Docket No. 54, Calendar No. 40,176.) Decided March 10, 1939.

Petition by Duncan C. McCrea, as Prosecuting Attorney of Wayne County and individually, to fix gas rates on gas furnished by the Detroit City Gas Company, a Michigan corporation. Other citizens intervened and joined in petition of Duncan C. Mc-Crea. By order of the Public Utilities Commission, the City of Detroit was served with a copy of the petition. Order of Public Utilities Commission, assuming jurisdiction to fix the rates, is reviewed by City of Detroit and Detroit City Gas Company by appeal in the nature of certiorari. Affirmed.

*Raymond J. Kelly,* Corporation Counsel, and *James H. Lee,* Principal Assistant Corporation Counsel, for plaintiff City of Detroit.

*Angell, Turner, Dyer & Meek (Park Chamberlain* and *James O. Murfin,* of counsel), for plaintiff Detroit City Gas Company.

*Harold Goodman,* for petitioner Duncan C. Mc-Crea and others.

*Raymond W. Starr,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant Public Utilities Commission.

McAllister, J. The Detroit City Gas Company during the past 30 years has manufactured, sold, and distributed gas in the city of Detroit. When its charter expired in 1923, the city entered into an agreement, granting a franchise for an additional time. Such franchise had not been ratified by three-fifths majority of the electorate of the city of De-

troit, and was thereafter declared invalid by this court. *Walker Brothers Catering Co.* v. *Detroit City Gas Co.*, 230 Mich. 564 (P. U. R. 1925D, 366). Controversy then arose between the city and the gas company as to the rates to be charged. The gas company published a schedule of rates, whereupon the city passed an ordinance which in effect accepted these rates, but at the same time imposed a rental charge of $125,000 per month upon the gas company for the use of the city streets. The company then filed a bill in equity in the United States district court for the eastern district of Michigan to enjoin the enforcement of this rental charge, and, before the determination of such case, promulgated an increased schedule of rates. The city, thereafter, filed a bill of equity in the circuit court of Wayne county, setting forth that such rates were unreasonable and arbitrary, and prayed that the company be enjoined from putting them into effect.

The entire controversy, up to this time, involved manufactured gas. However, both parties had been investigating the feasibility of the use of natural gas, and as a result of such investigation, and after considerable negotiation between the gas company and the city, it was decided to substitute natural gas for manufactured gas. Since the use of natural gas would render any decision in the pending cases of temporary effect, and in order to make a new arrangement, it was agreed that consent decrees should be entered in both pending cases, terminating the litigation and providing for a new contract for the furnishing and distribution of gas. This agreement was contained in the consent decree entered in the circuit court of Wayne county, which is the proceeding of especial importance in this case.

Such decree provided that the company was to receive a certain base earning, dividing profits above this agreed amount with the consumers. It further provided that within a specified time in the future the company would promulgate a schedule of rates for consumers. Pursuant to the decree, the gas company afterward promulgated a schedule of rates.

On April 27, 1937, Duncan C. McCrea, prosecuting attorney for Wayne county and a customer of the gas company, filed a petition with the Michigan public utilities commission, claiming that the plan and agreement contained in the decree were fraudulent and formulated solely in the interest of the gas company, to the damage and detriment of the rights of the public. In his petition, in which he was later joined by more than 50,000 other consumers of the gas company, he prayed that the commission take jurisdiction to investigate the methods by which the rates were established; to investigate the effect upon Michigan natural gas prices of alleged monopolistic control; and to establish just and reasonable rates. Upon the filing of the petition, the commission issued an order, setting a date for the hearing thereof, to ascertain whether it had jurisdiction to hear and determine the matters set forth in the petition, and caused notice of such hearing to be served upon petitioner, the city of Detroit, and the gas company.

After an extensive hearing, and upon the opinion of the attorney general, the commission determined that it had jurisdiction under the petition to investigate and establish just and reasonable rates for natural gas in the city of Detroit.

From the order entered by the commission, the gas company and the city of Detroit appeal, contending that the commission has no jurisdiction because:

1. The consent decree is an agreement fixing rates between the municipality and utility, and by statute the commission has no jurisdiction where there is such a contract.

2. Where the franchise of a public utility has expired, only the municipality can petition the commission to fix rates, and the commission obtains no jurisdiction upon the petition of an individual consumer.

3. Since the suit of the city in the circuit court for Wayne county was brought by the city on behalf of all other consumers of gas, the consent decree therein entered is binding on petitioner and all other consumers.

The primary question to be determined is whether, under the arrangement now existing between the city and the gas company, the public utilities commission is excluded from jurisdiction to inquire into and determine rates.

Section 4 of the public utilities commission act (2 Comp. Laws 1929, § 11009 as amended by Act No. 138, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 11009, Stat. Ann. § 22.4]), provides in part:

"In no case shall the commission have power to change or alter the rates or charges fixed in, or regulated by, any franchise or agreement heretofore or hereafter granted or made by any city, village or township."

If there is a valid agreement or franchise granted or made by the city, fixing or regulating rates or charges, the commission has no power to change or alter them, as rates fixed by agreement are not subject to control of the commission. *Lenawee County Gas & Electric Co.* v. *City of Adrian,* 209 Mich. 52 (10 A. L. R. 1328).

In this regard it is of importance to consider the power of a municipality to enter into a contract, fix

or regulate rates to be charged by a public utility, and the necessary requisites to the exercise of such a power. A municipal corporation possesses only those powers expressly granted; those necessarily or fairly implied in or incidental to the powers expressly granted; and those essential to the declared objects and purposes of the corporation. The latter consist of powers not simply convenient to the exercise of the declared objects but those indispensable thereto. *Attorney General* v. *Detroit Common Council,* 150 Mich. 310 (121 Am. St. Rep. 625) ; *Barnhart* v. *City of Grand Rapids,* 237 Mich. 90. No express power is given to the city of Detroit to regulate the rates of public utilities, and this power is not one of those essential to local self-government. *City of Kalamazoo* v. *Titus,* 208 Mich. 252, 265. Such power arises only from the exercise of powers necessarily implied.

Article 8, § 28, Const. of 1908, provides:

"No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

Under the above provision of the Constitution, the city has the power to fix reasonable rates as a condition to the use of its streets by a public utility. *City of Kalamazoo* v. *Kalamazoo Circuit Judge,* 200 Mich. 146. In the foregoing case, the court quoted

from *City of Noblesville* v. *Noblesville Gas & Improvement Co.*, 157 Ind. 162 (60 N. E. 1032), where the court stated that a city had the unquestionable right to grant to any person, firm or corporation a franchise to occupy its streets and alleys for conveyance of gas to customers; and further:

"That the want of power to legislatively fix a rate does not prevent the execution of a contract, is illustrated by the case of *City of Noblesville* v. *Noblesville Gas & Improvement Co.*, *supra*, where it is said:

" 'That the city had no power to regulate the rates of its licensee makes no difference. It had the power to contract. And the power to regulate as a governmental function, and the power to contract for the same end, are quite different things. One requires the consent only of the one body, the other the consent of two. In this instance the city acted in the exercise of its power to contract, and it is therefore entitled to the benefits of its bargain.'

"In *City of St. Mary's* v. *Hope Gas Co.*, (71 W. Va. 76, [76 S. E. 841, 43 L. R. A. (N. S.) 994]), it was held that the city might, in the control of the use of its streets, prescribe conditions including the fixing of rates for gas, and might contract therefor, even though it possessed no governmental power to fix rates.

"The distinction between fixing rates by contract and under governmental power was clearly recognized by the Supreme Court of the United States in the case of *City of Detroit* v. *Railway Co.*, 184 U. S. 368 (22 Sup. Ct. 410), where it was said:

" 'It is plain that the legislature regarded the fixing of the rate of fare over these street railways as a subject for agreement between the parties and not as an exercise of a governmental function of a legislative character by the city authorities under a delegated power from the legislature.' "

In *Boerth* v. *Detroit City Gas Co.*, 152 Mich. 654 (18 L. R. A. [N. S.] 1197), plaintiffs contended that the city had no power to regulate gas rates either by contract or legislation. It was held, however, that while the city had *no legislative power* to contract

or establish rates, it had the implied power to prescribe rates *by agreement,* as a condition to the use of its streets by the gas company, because of the control provided for by the Constitution.

The right therefore of the city to contract with reference to rates depends upon its right to control of its streets; and any contract made regarding rates is part of a franchise granted to a utility to use the streets.

In *Walker Brothers Catering Co.* v. *Detroit City Gas Co., supra,* where it was contended that a contract between a municipality and a gas company, after the expiration of a franchise providing for certain rates, was merely a contract and not a franchise, this court adopted the opinion of the trial court in which it was said:

"Plaintiffs contend that the agreement between the common council and the gas company is in effect a franchise and falls within this provision of the Constitution.

"The defendant company insists that the proceedings taken do not amount to a franchise, but merely to a fixing of the rates; and that while the agreement provides for a rate which shall be uniform during a period of three years, counsel for defendant insist that this is revocable at any time at the will of the city by simply ordering the gas company to vacate the streets. In other words, the gas company's rates are fixed for three years, but their tenancy of the streets is revocable at will.

"To my mind the report of the arbitrators will not bear this construction, because the report undertakes to continue the ordinance of 1893 in effect, except so far as modified. However, assuming that such action was beyond the power of the parties, and that as contended by defendant's counsel we have a rate fixed for three years with the rights to occupy

the streets determinable at the will of the city, such a condition would place the city in a situation where it must either accept the rates fixed during the three-year period, or as the alternative, do without gas. When viewed from this standpoint it seems to me that the fixing of rates for a period of three years does amount to a franchise, and as such should have been first approved by three fifths of the electors before it could be valid.''

Mr. Justice Moore, in speaking for the court in the same case, said:

''Counsel for the appellant insist that what was done does not amount to franchise. In passing upon that question the following language of the award should not be overlooked, we quote:

'' 'The ordinance of 1903, as amended, except as it is modified by this award, shall continue in full force and effect for the period fixed by this arbitration agreement.'

''And it was also agreed in the award that the rates were fixed for three years. It is difficult to see how the rates could be collected for three years without the tenancy of the street continuing for that time. We think the trial judge was right in holding that *what was done amounted to a franchise* and required the approval of three fifths of the voters before it would be valid.''

In the instant case, the decree consented to by the city and the gas company and the provisions of agreement contained therein amounted to a franchise.

Was the franchise above mentioned valid, or was it void for failure to comply with the necessary requirements?

Article 8, § 25, Const. of 1908, provides:

''No city or village shall have power to abridge the right of elective franchise, to loan its credit, nor

to assess, levy or collect any tax or assessment for other than a public purpose. Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election; and upon such proposition women taxpayers having the qualifications of male electors shall be entitled to vote."

There having been no vote of the electors of the city on the franchise above mentioned, it is necessary to determine whether it is subject to revocation at the will of the city. If it be not a franchise revocable at will, it is invalid as an agreement between the city and the gas company, and no legal franchise or contract to fix or regulate rates is in existence. To ascertain the legal effect of this agreement, it is necessary to inquire into the provisions of the decree in question.

The decree, dated December 23, 1935, and entitled, "City of Detroit, a municipal corporation of the State of Michigan, plaintiff, v. Detroit City Gas Company, a corporation of the State of Michigan, defendant," after reciting that "counsel having announced that the parties hereto have arrived at a compromise and settlement of the matters in controversy in this suit and wish to set forth in this decree a preliminary statement," proceeds with the stipulated agreements of the parties with reference to the plan that the gas company shall receive a certain base earning; that a certain amount of excess earnings shall be divided between the company and the consumers in certain proportions; and that an initial schedule of rates for natural gas "shall be

promulgated by the defendant company not later than May 1, 1936."

The court further orders, adjudges, and decrees that:

"12. It is not the intention of the parties to this cause that this decree shall in any wise alter or change any of the legal or equitable rights which either of the parties hereto may have as of the time immediately before the entry of this decree, and it is understood and agreed and so decreed that any and all such legal or equitable rights of either of the parties hereto shall continue and remain in full force and effect notwithstanding any of the provisions of this decree.

"13. Any of the terms of this decree may be modified or terminated by the court upon application of either of the parties hereto and on a full and complete hearing upon said application.

"14. It is the intention of the parties hereto that this court shall hereafter be the forum for the determination of controversies which may arise between the parties hereto until such time as said parties shall discontinue the operation of this decree."

Signed consent to the signature and entry of the decree is indorsed by the attorneys for the gas company and for the city.

According to the terms of this consent decree, any term may be modified or terminated by the court upon application of either party and on a full and complete hearing upon said application. Such a provision stipulating for modification or termination of any term of the decree, which includes the agreement between the parties, is not a contract or franchise revocable at the will of the city. The parties explicitly provide that the court shall be the forum for the determination of any questions that

may arise with regard to the agreement; and while it is provided that the court will be the medium of settlement of controversies until such time as said parties shall discontinue the operation of the decree, there is no implication that the city alone shall have the right to discontinue the operations of the decree and the agreement contained therein. The agreement is to be modified only by the court after application and hearing. Unless the court, upon application and hearing, modifies or alters the terms of the agreement, it is necessary for both the city and the gas company to agree to a discontinuation of the agreement. The result of the decree was the granting of a franchise and that the court should act as an arbitrator or adjudicate any disputes arising out of the agreement. The decree was, in effect, an agreement between the city and the gas company for the use of the streets of the city in furnishing gas to consumers and collecting charges therefor. Such franchise, not being revocable at the will of the city, was void for failure to comply with the constitutional provisions which require a three-fifths vote of the electors of the municipality to empower the city to make such a contract and franchise.

On other grounds it can also be said that there is in existence no contract between the parties fixing rates. The consent decree provided that the gas company was to promulgate the initial schedule of rates and that it should receive a certain base earning per year; that any earnings over and above such base earnings were to be shared in certain proportions between the gas company and its customers. The decree, which may be said to contain the agreement between the city and the company, as is explicitly contended by counsel for the city, made no provision as to rates.

In *Lenawee County Gas & Electric Co.* v. *City of Adrian, supra,* 58, in a case involving rates to be charged by a gas company, it was said:

"Many definitions of the word 'rate' are to be found, but as involved in the present controversy it can broadly be said to denote the price stated or fixed for some commodity or service of general need or utility supplied to the public, measured by a specified unit or standard. Such fixed prices are sometimes classified as contract or administrative rates voluntarily fixed or agreed upon between themselves by contracting parties, and legislative rates fixed by the legislature or its authorized agency as a paramount governmental function without consent or agreement of the parties."

The agreement neither provided a schedule of rates, nor did it determine what the rates would be. In this regard, it only provided what should be done with the net profits resulting from the collection of rates to be promulgated and charged in the future. The provision in the decree, that the company was to have the right to determine in the future the initial schedule of rates, cannot be said to be an agreement or franchise of the city fixing or regulating rates, for a public utility, where its charter has expired, has the right to fix rates, in the absence of a contract regulating them. *Walker Brothers Catering Co.* v. *Detroit City Gas Co., supra.* The agreement and franchise contained in the consent decree is invalid for not having been approved by a three-fifths majority of the electorate; and it is of no effect as an agreement fixing rates, because no rates are therein provided and the promulgation of rates in the future is left entirely in the hands of the gas company.

But it is said that because the circuit court of Wayne county had previously taken jurisdiction, it was erroneous for the commission to take jurisdiction of the same subject matter. With reference to the proceedings in which the consent decree was entered, the case involved the reasonableness of rates for artificial gas charged by the gas company after the expiration of its franchise. Prior to the time the consent decree was entered, the entire situation had changed, from the time the suit was commenced, in one important respect: the controversy then concerned the rates to be charged for natural gas rather than artificial gas; and in order to escape from the maze of new issues and the tangle of controversies arising out of the ordinance as to rental charges, the promulgation of rates, and a suit in the Federal court, as well as the State court, the parties went before the circuit court and under its jurisdiction of the case, involving "reasonable" rates, made their contract and constituted the court as the arbitrator of the terms thereof. But does the fact that the court takes jurisdiction to determine the reasonableness of rates enable it to retain jurisdiction on a consent decree to provide for the rates to be charged or a plan under which rates are to be promulgated? The court has jurisdiction to determine whether such rates are unreasonable where there is no contract and there are no proceedings before the public utilities commission.

Counsel for the gas company on the hearing before the public utilities commission was of opinion that, by virtue of the terms of the consent decree, it could only be terminated by the court upon cause shown; and in response to a question by the commission, said that he would hesitate to move without the court's permission, and stated:

"When you say 'terminate it at will,' I think it requires an order from the court. I think the language was put in there deliberately * * * I think you must go to court and show cause why it should be changed, and I think that was the spirit in which this was entered into."

Counsel for the city, however, answered a similar inquiry by stating that, "if the city had the right prior to the entry of the decree to revoke any part of the agreement which they had entered into and which was then embodied in the decree, they would have that right today." There was no agreement, however, until the decree was consented to and signed. Certainly the decree itself requires the adjudication by the court of any controversy arising therefrom, unless, of course, both parties agree to a discontinuation of the agreement; and the city bound itself to the observance of such decree in every way it was possible for it to do in a court of law.

But the parties by consent or conduct cannot give the court jurisdiction over the subject matter where it otherwise would have no jurisdiction, *Hoffman* v. *Security. Trust Co. of Detroit,* 256 Mich. 383; *Exo* v. *Detroit Automobile Inter-Insurance Exchange,* 259 Mich. 578; *Orloff* v. *Morehead Manfg. Co.,* 273 Mich. 62; *Strandt* v. *Strandt,* 278 Mich. 354; and it is contended by the city and the gas company that the decree provides for the fixing and regulation of rates and charges. It is upon such claim that one of the most important matters of defense is urged—that the commission has no jurisdiction for the reason that there is in effect a contract regulating rates by virtue of the consent decree. If that be the case, we must hold that the court had no power to fix or establish rates. *Nebraska Telephone Co.* v. *State of*

*Nebraska, ex rel. Yeiser,* 55 Neb. 627 (76 N. W. 171, 45 L. R. A. 113); 2 Pond, Public Utilities, p. 1008 *et seq.,* § 554. The determination of whether a rate is reasonable is a judicial question, *Wellman* v. *Railway Co.,* 83 Mich. 592, 620, but the power of fixing and regulating rates, although it may be delegated to a city to contract with reference thereto, is a legislative function and not a judicial one. *City of Cadillac* v. *Citizens' Telephone Co.,* 195 Mich. 538, 544; *City of Niles* v. *Michigan Gas & Electric Co.,* 273 Mich. 255, 263; *City of Kalamazoo* v. *Kalamazoo Circuit Judge, supra;* 2 Pond, Public Utilities, pp. 971–978, 983–989, 994, §§ 546, 548, 551.

The fact that the court may have had jurisdiction of the suit to determine the reasonableness of rates did not empower it to retain jurisdiction to determine whether rates to be promulgated in the future by the company would be unreasonable; it could not determine whether the rates were reasonable, under the circumstances, because no rate schedule was in existence. If it could be considered that the court retained jurisdiction of the case by virtue of the consent decree to determine rates to be promulgated in the future, it would result in ousting the commission of all jurisdiction, where no franchise was in existence, even in case the city desired to make application to the commission. This would be contrary to the intent of the legislature in giving the commission jurisdiction in such cases over the rate charged by utility companies.

Municipal corporations can establish rates by contract and franchise but they have no legislative power to fix charges to be made by public utility companies. The primary authority to fix such rates is in the legislature. *City of Niles* v. *Michigan Gas & Electric Co., supra.* The legislature may delegate

such power to municipalities, but only in express terms or by necessary implication, and article 8, § 28, Const. 1908, does not provide for such a delegation of power to cities. *City of Kalamazoo* v. *Kalamazoo Circuit Judge, supra,* 161. The authority of municipalities over rates, resulting from section 28, is a wholly different power. Because of the control of its streets reserved to the city, it has the power to contract for rates. Such authority results not from a grant of power to legislate but from a right of contract arising out of an implied power to fix reasonable rates by virtue of the reserved constitutional power of control of its streets.

"The exercise of this governmental legislative function, this attribute of sovereignty, must be delegated in express terms or by necessary implication. * * * 'In the absence of charter authority or other statutory or constitutional provision delegating the power in express terms or by necessary implication, it is the rule that a municipal corporation has no power to fix by ordinance the price at which a gas company shall supply its consumers.' * * * 'The power to regulate as a governmental function, and the power to contract for the same end, are quite different things. One requires the consent only of the one body, the other the consent of two. In this instance the city acted in the exercise of its power to contract, and it is therefore entitled to the benefits of its bargain.' " *City of Kalamazoo* v. *Kalamazoo Circuit Judge, supra,* 157.

The only power to fix rates, aside from contract, is lodged by the legislature in the public utilities commission, and it was stated on the hearing before the commission by counsel for the city of Detroit:

"We all acknowledge that the courts have no jurisdiction to make rates. We all acknowledge that

the only rate-making body where jurisdiction exists is this body in the State of Michigan.''

In *McCollum* v. *Southern Bell Telephone & Telegraph Co.,* 163 Tenn. 277 (43 S. W. [2d] 390), it was held:

''While the act * * * does not expressly state that the fixing of rates by the public utilities commission is exclusive, such, in our opinion, was the legislative intent, and by the great weight of authority the courts do not have jurisdiction over such matters until they have been submitted to and passed upon by the commission.''

Also, see *St. Clair Borough* v. *Railway Co.,* 259 Pa. 462 (103 Atl. 287, 5 A. L. R. 20) ; *West* v. *United Railways & Electric Co.,* 155 Md. 572 (142 Atl. 870) ; *Shreveport Laundries, Inc.,* v. *Southern Cities Distributing Co.,* 176 La. 994 (147 South. 56) ; *Purcell* v. *Railroad Co.,* 242 App. Div. 292 (275 N. Y. Supp. 70).

In *Town of West New York* v. *Board of Public Utility Comm'rs,* 105 N. J. Eq. 438 (148 Atl. 402), the court said:

''It is a well-established rule of law in States where rates for public utilities are fixed and regulated by the legislature, or by special statutory agencies created by the legislature therefor, that the courts have no jurisdiction over rates as such, and unless some constitutional right or legal infirmity in proceedings by which a rate is fixed is involved, the courts have no jurisdiction or power to interfere with a rate which is, in fact, sanctioned by the legislature, or by a body created by the legislature—empowered to sanction same. That the fixing and regulation of rates for public utilities is clearly a legislative function has been well estab-

lished in law. The court of chancery, under existing laws, has no jurisdiction whatever with respect thereto.''

In *City of Cadillac* v. *Citizens' Telephone Co.,* 195 Mich. 538, where there was no contract between the municipality and utility, it was held that there was no ground for assumption of jurisdiction by a court of equity; that original jurisdiction to determine the rates had been given to the commission by the legislature and that if such court assumed jurisdiction before a determination by the commission, such action would be premature.

In the instant case, the circuit court had no jurisdiction to fix or establish rates; and the consent decree did not preclude the public utilities commission from taking jurisdiction.

*Consumers Power Co.* v. *Michigan Public Utilities Commission,* 270 Mich. 213 (10 P. U. R. [N. S.] 487), upon which appellants rely as authority for the proposition that the commission may not take jurisdiction of rates when such matters are pending before a court, can be distinguished from the case before us. In that case, several consumers of gas had filed a bill in equity in the circuit court for Saginaw county to declare a rate agreement invalid. The proceeding was removed to the Federal court. There was a contract in existence between the gas company and the municipality, fixing specific rates to be charged for gas. The issue was as to whether the city was bound by the terms of the contract. While such suit was pending, the same consumers who had filed the bill, together with others, petitioned the commission to fix reasonable rates. It must be apparent that the commission could not fix rates if there were a valid contract between the utility and the municipality, for the commission has

no jurisdiction where rates are fixed by a valid contract. This court, therefore, held that until the Federal court having jurisdiction of the case involving the validity of the contract decided whether its terms were binding upon the city, the proceedings before the commission should be held in abeyance. The principle upon which the case was decided is not applicable to the facts before us.

But it is contended by the city and the gas company that where a franchise has expired, only a municipality has the right to petition the commission to fix the rates and charges; and that the petition in this case, having been brought by individual consumers, confers no jurisdiction upon the commission.

We are of the opinion, however, that this question is *res judicata* and that on the expiration of the franchise of the gas company, the commission had jurisdiction to fix charges on the petition of a consumer.

In *Taylor* v. *Public Utilities Commission,* 217 Mich. 400, 402 (P. U. R. 1922 D, 198), this proposition was before the court and resulted in an equally divided opinion. Mr. Justice WIEST held that the franchise of the utility company having expired, the commission could only act upon petition by the municipality, and in the course of his opinion said:

"The Michigan public utilities commission is a creature of the statute, has no inherent or common-law power, and its jurisdiction in any instance must affirmatively appear in the statute before it can be invoked or exercised. *Expressio unius est exclusio alterius* has been a long time legal maxim and a safe guide in the construction of statutes marking powers not in accordance with the common law.

" 'No maxim of the law is of more general or uniform application, and it is never more applicable than in the construction and interpretation of statutes.' Broom's Legal Maxims (8th Ed.), p. 663, cited in *Whitehead* v. *Cape Henry Syndicate,* 105 Va. 463 (54 S. E. 306).

"When what is expressed in a statute is creative, and not in a proceeding according to the course of the common law, it is exclusive, and the power exists only to the extent plainly granted. Where a statute creates and regulates, and prescribes the mode and names the parties granted right to invoke its provisions that mode must be followed and none other, and such parties only may act. 2 Lewis' Sutherland Statutory Construction (2d Ed.), p. 916 *et seq.,* §§ 491–493. The provisions of this statute cannot be enlarged by implication as they expressly exclude any such intendment. The maxim *expressum facit cessare tacitum* is also of applicability here. This law designates the actors, and when a law designates the actors none others can come upon the stage. The words of the statute are restrictive and the designation therein of the municipality as the party to give the commission jurisdiction operates to the exclusion of plaintiff. The matter falls squarely within the provision of the statute granting the exclusive privilege to the municipality to petition the commission to fix the rates and charges in case the franchise of the company has expired."

Chief Justice FELLOWS held, on the contrary, that the commission had the power to act upon the petition filed by an individual consumer and said (p. 405):

"Primarily this legislation was brought about by the discriminatory rates, services and practices of the carriers advantageous to favored shippers. But the powers of these commissions have gradually been broadened to include general regulation of public utilities. The history of this legislation shows not a contraction of the powers of the com-.

missions but an extension of them. The present Michigan public utilities commission created by Act No. 419, Pub. Acts 1919, took over all the powers of the former Michigan railroad commission except as otherwise provided in the act creating it. It extended the jurisdiction of the commission to bring within its regulatory power gas heating and lighting companies. The former Michigan railroad commission as to the utilities it regulated was not limited in its action exclusively to cases brought before it on complaint but could act of its own motion (2 Comp. Laws 1915, §§ 8130 [e], 8133 [f], 6699). Taking into consideration the fact that there has been a continued broadening of the powers of the commissions, including our own, it is difficult for me to conceive that it was the legislative intent to so circumscribe the power of the commission as to prohibit it from acting under the facts disclosed by this record except on the application of the municipality. In permitting the municipality to institute proceedings, I do not conclude that it was the legislative intent to exclude all other proceedings. Such a construction would permit a gas heating and lighting company whose franchise had expired to operate at will without regulation as to rates, service or discrimination unless the municipality petitioned the commission to take jurisdiction. I cannot feel that the language used in this act should be so construed or that such was the legislative will."

The law, therefore, remained undecided until *Walker Brothers Catering Co.* v. *Detroit City Gas Co., supra,* in which certain individual consumers of gas filed a bill to enjoin the collection of rates fixed by arbitrators appointed by the municipality and the company. The city of Detroit was an intervening plaintiff in the suit. In speaking for the court, Mr. Justice MOORE held that the arbitration agree-

ment was void for the reason that it was a franchise not approved by three fifths of the electorate; but that inasmuch as there was no evidence of unreasonable rates, the gas company could not be enjoined without a showing to this effect, saying:

"In the instant case it is not shown that the rates it is sought to collect are unreasonable. If the city thinks they are, it can easily take the judgment of the public utilities commission."

In a concurring opinion, Mr. Justice FELLOWS referred to the fact that, because of an equal division in *Taylor* v. *Public Utility Commission, supra,* there had been a failure to declare the law with reference to the right of a consumer to petition the commission to fix the rates; and that he thought that the court should hold in accordance with his opinion in the *Taylor Case* that a consumer did have the right to bring such a proceeding. He, therefore, held that the dismissal of the bill should be without prejudice to the rights of consumers to apply to the commission to fix rates to be charged. A majority of the court, including Justice MOORE, held with such opinion.

Mr. Justice WIEST, concurring in the result, and speaking for the minority of the court, addressed his opinion to a dissent from the views of Mr. Justice FELLOWS, and maintained that jurisdiction of the commission was conditioned upon an application by the municipality, and that a petition by a consumer was not sufficient to give such jurisdiction.

The result of the case was that the court, having before it two opinions—one that a consumer had the right to petition the commission, and the other, that only the municipality could petition—decided that the commission did secure jurisdiction on the appli-

cation of a consumer; and following such majority opinion, a decree was entered by the Supreme Court expressly reserving the right of a consumer to make application to the commission, it being provided therein that the decree of the circuit court be reversed "and the bill of complaint dismissed, but without prejudice to the rights of the plaintiffs, or other consumers of gas, or defendants, to apply to the commission to fix rates to be charged."

Such a conclusion was drawn from the construction of the statute, 2 Comp. Laws 1929, § 11008 *et seq.* (Stat. Ann. § 22.3 *et seq.*) which abolished the railroad commission, and provided:

"All the rights, powers, and duties now vested by law in said railroad commission shall be deemed to be transferred to and vested in said public utilities commission and shall be exercised and performed thereby, except as herein otherwise provided. * * * Said utilities commission shall have and exercise the same measure of jurisdiction in all respects as is now held and exercised by the Michigan railroad commission * * * and wherever reference is made in such law to the 'commission' or to the 'Michigan Railroad Commission,' such reference shall be construed to mean the public utilities commission herein provided for."

It is further provided in 2 Comp. Laws 1929, § 11009 as amended by Act No. 138, Pub. Acts 1931 (Stat. Ann. § 22.4):

"In addition to the rights, powers, and duties vested in and imposed on said commission by the preceding section, its jurisdiction shall be deemed to extend to and include the control and regulation, including the fixing of rates and charges of all public utilities within this State producing, transmitting, delivering or furnishing gas for heating or

lighting purposes for the public use. Subject to the provisions of this act the said commission shall have the same measure of authority with reference to such utilities as is granted and conferred with respect to railroads and railroad companies under the various provisions of the statutes creating the Michigan railroad commission and defining its powers and duties."

The railroad commission had power to investigate rates either on its own motion or on petition of a consumer. 2 Comp. Laws 1915, § 8130 (2 Comp. Laws 1929, § 11038.) It would therefore appear that the public utilities commission would have jurisdiction to investigate rates and determine them on petition of a consumer, since such commission has the same measure of jurisdiction "in all respects as was formerly held and exercised by the railroad commission, and whenever reference is made in such law in the public utility act to the 'commission' or to the 'Michigan railroad commission,' the reference is to be construed to mean the public utilities commission." Whether the commission has power to hear and determine rates on petition of consumer in the case of a gas utility is determined by the section which confers powers over such companies:

"In addition to the rights, powers and duties vested in * * * said commission by the preceding section * * * its jurisdiction shall be deemed to extend to and include the control * * * of all public utilities * * * furnishing gas * * * for the public use." 2 Comp. Laws 1929, § 11009 as amended by Act No. 138, Pub. Acts 1931 (Stat. Ann. § 22.4).

It is important to observe that the statute provides that *in addition* to all the powers the commission has as successor to the former railroad com-

mission, it is also given jurisdiction over gas utilities. The jurisdiction of the public utilities commission is then defined:

"Subject to the provisions of this act the said commission shall have the same measure of authority with reference to such utilities as is granted and conferred with respect to railroads * * * under the various provisions of the statutes creating the Michigan railroad commission and defining its powers and duties." 2 Comp. Laws 1929, § 11009 as amended by Act No. 138, Pub. Acts 1931 (Stat. Ann. § 22.4).

The railroad commission, however, had power to investigate rates on petition of a consumer; and it would follow that the public utilities commission has the same power in regard to gas utilities, unless something to the contrary appears in the statute.

The statute further provides, however:

"In any case where a franchise under which a utility is, or has been operated, including street railways shall have heretofore expired or shall hereafter expire, the municipality shall have the right to petition the commission to fix the rates and charges of said utility in accordance with the provisions of this act * * * and thereon the commission shall have full jurisdiction in the premises." 2 Comp. Laws 1929, § 11009 as amended by Act No. 138, Pub. Acts 1931 (Stat. Ann. § 22.4).

If, subject to the provisions of the act, the public utilities commission has the same jurisdiction over gas utilities as the railroad commission had over railroads, and the railroad commission could fix rates on petition of a consumer, it cannot be held that the above provision of the statute, providing that the municipality shall have the right to petition the commission, excludes the right of a consumer to

make application. Under the grant of the same large measure of jurisdiction to the public utilities commission as was exercised formerly by the railroad commission, including the right to fix rates on petition of a consumer, the mere expression of the right of the municipality to petition cannot be deemed a prohibition of the right of all others to petition. A consumer has this right unless something to the contrary appears; and it cannot be said that the above provision of the statute is an expression to the contrary.

In the bill of complaint in the *Walker Case,* plaintiffs filed their bill as consumers alleging that on their petition the commission had jurisdiction over rates on the expiration of the franchise. Defendant claimed that there would be such jurisdiction if application to said commission had been made by the city of Detroit. In its opinion the trial court stated that it believed the Supreme Court should determine on appeal this question of whether a petition by a consumer gave jurisdiction to the commission; and in the briefs of all the parties in the Supreme Court, this issue is discussed.

In 15 C. J. p. 940, it is said:

"All the propositions assumed by the court to be within the case, and all questions presented and considered and deliberately decided by the court leading up to the final conclusion, are as effectually passed upon as the ultimate questions solved, and the judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it."

In *Hardin* v. *Hardin,* 26 S. D. 601 (129 N. W. 108), plaintiff in his bill of complaint asked that certain property held by defendant was an asset of a joint

enterprise in which the parties had engaged, and asked that such property be decreed to be held in trust by the defendant. The trial court entered a decree that "plaintiff's complaint * * * be dismissed on the merits, but without prejudice to the plaintiff's right to bring another action against the defendant." Thereafter, plaintiff brought such suit, and on appeal it was held that the reservation in the decree, even if erroneous, was *res judicata,* and prevents "the raising of any question as to the right to bring or maintain such * * * suit." See, also, *Bodkin* v. *Arnold,* 45 W. Va. 90 (30 S. E. 154); *Newton* v. *Wade,* 239 App. Div. 742 (268 N. Y. Supp. 670).

It is said in 34 C. J. p. 797:

"A judgment or decree which expressly excepts or reserves from its operation specified rights or claims of parties in suit, or the decisions of questions in issue, or the right to take further proceedings in respect to certain matters, is not a bar to subsequent action on the matters so reserved; *but on the contrary the reservation itself becomes res judicata, and prevents the raising of any question as to the right to bring or maintain such subsequent suit.*"

With regard to the question of whether the decision in the *Walker Case* as expressed in the opinion of Mr. Justice FELLOWS is decisive in the instant case, it has been said that all that is necessary for a decision to be authoritative is to show application of the judicial mind to the subject.

"When a court of last resort intentionally takes up, discusses and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a

binding decision." *Chase* v. *American Cartage Co., Inc.,* 176 Wis. 235, 238 (186 N. W. 598).

In *Alexander* v. *Worthington,* 5 Md. 471, 488, it is said:

"But where a question of general interest is supposed to be involved and is fully discussed and submitted by counsel, the court frequently decides the question with a view to settle the law, and it has never been supposed that a decision made under such circumstances could be deprived of its authority by showing that it was not called for by the record. * * * All that is necessary in Maryland to render the decision of the court of appeals authoritative on any point decided is to show that there was an application of the judicial mind to the precise question adjudged; and this we apprehend is the rule elsewhere."

It is true that the views of Justice FELLOWS were expressed in a separate concurring opinion. Views, however, expressed in separate concurring opinions are the views of the court when it appears that the majority of the court concurred in such separately expressed views. *Anderson* v. *Sutton,* 316 Mo. 1058, 1065 (293 S. W. 770). It was stated by Mr. Justice FELLOWS that the court should declare the law on the point involved, obviously, as a guide in future proceedings. His opinion was devoted to this one question, and that of the dissenting opinion of Mr. Justice WIEST was confined to a dissent from this point. The majority of the court agreed that the law on this question should be declared and held that a consumer had the right to petition the commission to fix rates; and in the decree of the court, the right was expressly reserved to such consumer, or any consumer, to file a petition before the commission.

It is difficult to understand the contention of appellants that this question was not decided in the *Walker Case.* In three different opinions the only single point upon which there was any disagreement was whether the commission secured jurisdiction to fix rates on petition of a consumer. This issue was narrowly drawn, and the court disagreed on the point in question. The bill was not merely dismissed without prejudice, but in the majority opinion *there was explicitly set forth the reservation of the consumer's right to bring the matter before the commission by petition.*

There is no question that the point was before the court; that the court intended to declare the rule of law for a guide in the future; that there was an application of the judicial mind to the proposition and a thorough consideration of the subject; and that the majority of the court concurred with the views of Mr. Justice Fellows with the clear intent and expressed purpose of determining this issue.

While there is an interesting discussion in the briefs of counsel with reference to the fact that the agreement between the city and the gas company is a sliding scale, or service-at-cost plan and without going into the claimed merits and advantages of such proposition, it is sufficient to say that it is not pertinent to the issues here. No rates were provided in the agreement; it was only a plan in which the gas company could promulgate a schedule of rates in the future.

From the foregoing, it is our determination that:

1. The agreement and franchise contained in the consent decree, not being revocable at the will of the city, was void for the reason that it was not approved by a three-fifths majority of the electorate of the city of Detroit.

2.   The aforementioned agreement was invalid as a contract fixing rates on the expiration of the franchise, as no rates were provided therein.

3.   The circuit court of Wayne county had jurisdiction only to inquire into whether the rates charged were reasonable, and the matters in the decree, not being concerned therewith, were beyond its jurisdiction.

4.   On the expiration of a franchise to a gas company, where no contract exists with the municipality, a consumer has the right to petition the public utilities commission to fix reasonable rates.

The order of the commission is affirmed, no costs being allowed as a public question is involved.

Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.   Butzel, C. J., and North, J., did not sit.